UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL KUEBLER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 3:18-cv-00113-RLY-MPB |
| | ) | |
| VECTREN CORPORATION, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Vectren Corporation ("Vectren") and CenterPoint Energy, Inc. ("CenterPoint") entered into a merger agreement under which Vectren becomes a CenterPoint company and agrees to pay its shareholders $72.00 cash per share for each share of common stock held. As required by federal securities laws, Vectren filed several proxy statements with the Securities and Exchange Commission in connection with the merger. Litigation then ensued. The court consolidated seven different lawsuits and appointed Michael Kuebler, James Danigelis, and Michael Nisenshal ("Plaintiffs") as lead plaintiffs. Now before the court is Plaintiffs' motion for a preliminary injunction which seeks to enjoin the upcoming shareholder vote set for August 28, 2018. For the reasons set forth below, the court **DENIES** Plaintiffs' motion.

**I.     Background**

The following facts are undisputed. On April 21, 2018, Vectren, an energy holding company, and CenterPoint, a public utility holding company, entered into a merger agreement. Under the agreement, Vectren becomes a CenterPoint company and agrees to pay its shareholders $72.00 cash per share for each share of common stock held. On June 18, 2018, as required by federal securities law, Vectren filed a 172-page preliminary proxy statement with the SEC related to the merger. (*See* Filing No. 35, Preliminary Proxy Statement, Ex. A1). On July 16, 2018, Vectren filed its definitive proxy statement. (Filing No. 35, Definitive Proxy Statement, Ex. A2). The definitive proxy statement provides that there will be a shareholder meeting on August 28, 2018 at which point the shareholders will be asked to approve the merger.

The filing of the proxy statements resulted in seven different lawsuits.[1] The thrust of the lawsuits was that Vectren and its board of directors (collectively "Defendants") violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1943, 15 U.S.C. §§ 78a *et seq.*, by omitting material information in the proxy statements, rendering them false and misleading. On July 10, 2018, Plaintiffs Kuebler and Danigelis both moved for a preliminary injunction. After the court consolidated the lawsuits,[2] on August 15, 2018,

---

[1] Six of the lawsuits challenged the preliminary proxy statement. The other lawsuit challenged the definitive proxy statement. However, there are no meaningful differences between the preliminary and definitive proxy statements at least with respect to the claims alleged in the various lawsuits. Accordingly, the court will cite to the definitive proxy statement even though the majority of the lawsuits challenged the preliminary proxy statement.

[2] The individual lawsuits were *Kuebler v. Vectren Corp. et al.*, No. 3:18-cv-00113-RLY-MPB; *Danigelis v. Vectren Corp. et al.*, No. 3:18-cv-00114-RLY-MPB; *Scarantino v. Vectren Corp. et al.*, No. 3:18-cv-00115-RLY-MPB; *Stein v. Vectren Corp. et al.*, No. 3:18-cv-00117-RLY-MPB; *Nisenshal v. Vectren Corp. et al.*, No. 3:18-cv-00121-RLY-MPB; *VonSalzen v. Vectren Corp. et*

the court conducted a hearing on the pending motion for a preliminary injunction, and on August 17, 2018, both parties filed their proposed findings of fact and conclusions of law. The motion is now ripe for a decision.

## II.     Legal Standard

There are two phases to obtaining a preliminary injunction. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of America, Inc.,* 549 F.3d 1079, 1085 – 1086 (7th Cir. 2008). First, the moving party must initially show "(1) that [it] will suffer irreparable harm absent preliminary injunctive relief during the pendency of [the] action; (2) inadequate remedies at law exist; and (3) [it] has a reasonable likelihood of success on the merits." *Whitaker by Whitaker v. Kenosha Unified School District No. 1 Board of Educ.*, 858 F.3d 1034, 1044 (7th Cir. 2017) (citation omitted). If the moving party survives the threshold phase, then the court balances the harms between the parties and considers any effects on the public interest. *See id.* Preliminary injunctions are considered an extraordinary remedy and should only be issued in cases clearly demanding them. *See Girl Scouts of Manitou Council, Inc.*, 549 F.3d at 1085 (citation omitted).

## III.    Discussion

Plaintiffs argue that the court should preliminarily enjoin the shareholder vote until Defendants supplement their disclosures. However, Plaintiffs have failed to make a

---

*al.*, No. 3:18-cv-00122-RLY-MPB; *Kent v. Vectren Corp. et al.*, No. 1:18-cv-02263-SEB-TAB. The consolidated lawsuit is *Kuebler et al. v. Vectren et al.*, No. 3:18-cv-00113-RLY-MPB.

threshold showing that there is a likelihood of success on the merits and that irreparable harm will occur absent injunctive relief.[3]

## A. Likelihood of Success on the Merits

To prevail on a claim under Section 14(a) and Rule 14a–9 of the Securities and Exchange Act, a plaintiff must show (1) the proxy statement contains a material misrepresentation or omission, (2) the defendant was negligent, and (3) the proxy statement was an essential link in the merger or acquisition. *Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F.Supp.2d 1141, 1151 (D. Kan. 2001). An omission is material "if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976). This requires "a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder" or that "the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."[4] *Id.*

---

[3] Because of these findings, the court does not reach whether an adequate remedy at law exists or whether the balance of harms tips in Defendants' favor.

[4] Defendants argue that the Seventh Circuit has adopted a heightened standard of materiality: the omission that the shareholder seeks to be disclosed must be "plainly material" which means it should not be a close call. *See In re Walgreen Co. Stockholder Litigation*, 832 F.3d 718, 725 (7th Cir. 2016). That standard was announced in the context of the court approving a class-action settlement which resulted in the release of all other disclosure-related class claims. *Id.* at 721. The court need not decide whether this heightened standard applies because, here, there is an insufficient showing that the alleged additional disclosures meet the seemingly lower standard.

4

Defendants' definitive proxy statement is 172 pages. (Filing No. 35, Definitive Proxy Statement, Ex. A2).[5] It contains, among other things, a twelve-page summary of the background of the merger (*id.* at 16 – 28), a four-page summary of Vectren's Board of Director's recommendation for the merger (*id.* at 28 – 32), and—most relevant to Plaintiff's challenges—an eight-page summary of the fairness analyses performed by Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch"), Vectren's financial advisor (*id.* at 32 – 39). That summary covers the three types of financial analyses Merrill Lynch performed to evaluate the $72.00 per share merger consideration: (1) a Selected Publicly Traded Companies Analysis, (2) a Selected Precedent Transactions Analysis, and (3) a Discounted Cash Flow Analysis.[6] *See id.* The proxy statement also provides certain management projections including Vectren's projected net income, depreciation and amortization, EBITDA, and capital expenditures for the years 2018 through 2027. *Id.* at 40 – 41.

Plaintiffs argue that Defendants have violated Section 14(a) and Rule 14a–9 by omitting three pieces of information from their proxy statements: (1) Vectren's unlevered cash flow projections; (2) the financial analyses performed by Merrill Lynch; and (3) the

---

[5] Because Definitive Proxy Statement spans four different filing numbers—35-6, 35-7, 35-8, and 35-9—the court will only cite to the proxy statement itself.

[6] Merrill Lynch's selected publicly traded companies analysis compares Vectren's publicly available financial information to that of 18 other companies. Its selected precedent transactions analysis compares the proposed merger to 26 other similar transactions. Finally, its discounted cash flow analysis estimates the present value of the standalone unlevered, after-tax free cash flows that Vectren was forecasted to generate from 2018 through 2023.

5

presence of any Don't Ask, Don't Waive ("DADW") provisions within the confidentiality agreements between Vectren and potential bidders.

At least on the present record before the court, Plaintiffs have failed to make a threshold showing that there is a substantial likelihood that the disclosure of the three pieces of information would have assumed actual significance in the deliberations of the reasonable shareholder or would have been viewed by a reasonable investor as having significantly altered the "total mix" of information made available. *See TSC Industries, Inc.*, 426 U.S. at 449. Plaintiffs have not offered any evidence that the three pieces of omitted information are material or would somehow alter the "total mix" of information. Plaintiffs have not submitted a declaration or an affidavit. They have not offered an expert to opine on the materiality of the three pieces of information. They have not submitted any documents for the court to consider. Instead, they have relied on case law and argument to show that these omitted statements render Defendants' proxy statement misleading, seemingly as a matter of law. However, there is no *per se* rule that financial information must be included in a proxy statement. *See Kennedy v. Venrock Associates*, 348 F.3d 584, 592 (7th Cir. 2003). Absent any evidence explaining why *these omissions* render *this proxy statement* misleading, Plaintiffs have not made a sufficient showing of likelihood of success on the merits.

Plaintiffs first argue that it is well-settled that unlevered cash flow projections are among the most important financial projections shareholders need in order to assess the fairness of a corporate transaction. Thus, the omission of Vectren's unlevered cash flow projections amounts to a material one. *See e.g. Maric Capital Master Fund, Ltd. v. Plato*

6

*Learning, Inc.*, 11 A.3d 1175, 1178 (Del Ch. 2010) (finding proxy statement materially misleading where future cash flow was omitted); *see also In re Netsmart Technologies, Inc. Shareholders Litigation*, 924 A.2d 171, 203 (Del. Ch. 2007) (same). As already indicated though, there is no *per se* rule that financial information, including cash flow, must be included in a proxy statement. *See Kennedy*, 348 F.3d at 592; *see also Calleros v. FSI Intern., Inc.*, 892 F.Supp.2d 1163, 1175 (D. Minn. 2012) ("There is no mechanical checklist of the sorts of things that must be disclosed relating to an investment bank fairness opinion . . . .") (internal quotations and citation omitted). Additionally, just because a piece of information is important does not necessarily mean it is material. *See e.g. Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1174 (Del. 2000) ("Omitted facts are not material simply because they might be helpful."). The omitted facts must have actual significance or must alter the total mix of information. *See Bushansky v. Remy International, Inc.*, 262 F.Supp.3d 742, 750 (S.D. Ind. 2017). Here, there has not been such a showing—particularly considering that other management projections were disclosed. *Id.* (finding additional line item figures underlying a cash flow calculation to be immaterial where a summary of certain financial projections underlying the cash flow projections was already provided).

Plaintiffs next argue that the summary of Merrill Lynch's fairness analyses is incomplete because it fails to disclose several key inputs and assumptions from Merrill Lynch's discounted cash flow analysis. *See Netsmart Technologies*, 924 A.2d at 203 – 204. But a proxy statement need not include all of the inputs relied on by a financial advisor. *See Bushansky*, 262 F.Supp.3d at 751. When a board relies on the advice of a

financial advisor, stockholders are only entitled to a "fair summary" of the financial advisor's work. *In re Trulia, Inc. Stockholder Litigation*, 129 A.3d 884, 900 (Del. Ch. 2016), *cited with approval in In re Walgreen*, 832 F.3d at 725. "A fair summary, however, is a *summary*. By definition, it need not contain all information underlying the financial advisor's opinion or contained in its report to the board." *In re Trulia*, 129 A.3d at 900. Here, the proxy statement contains an eight-page summary of Merrill Lynch's work, and Plaintiffs have not offered any evidence—testimony, documentary, or otherwise—that the eight-page summary is not a "fair" one.

Plaintiffs' last argument is that Defendants' failure to disclose the presence, or absence, of any DADW provisions in the definitive proxy amounts to a material omission. *See In re Celera Corp. Shareholder Litigation*, No. 6304–VCP, 2012 WL 1020471, at *21 (Del. Ch. Mar. 23, 2012), *rev'd in part on other grounds*, 59 A.3d 418 (Del. 2012). First, there is no evidence that any of the confidentiality agreements contain DADW provisions, and second, even if they did, Plaintiffs have not offered any evidence that such provisions would be material given that the proxy statement already informs shareholders that Vectren utilized a competitive bidding process—a process that, in and of itself, Plaintiffs do not challenge. *See Bushansky*, 262 F.Supp.3d at 750; *see also TSC Industries, Inc.*, 426 U.S. at 449.

Accordingly, Plaintiffs have failed to show that they are likely to succeed on the merits.

### (B) Irreparable Harm

Plaintiffs must also show they will be irreparably harmed absent injunctive relief. *Whitaker*, 858 F.3d at 1044 (citation omitted). Harm is irreparable where "it cannot be prevented or fully rectified by the final judgment after trial." *Id.* at 1045 (internal quotations and citation omitted).

Plaintiffs argue that where there is an upcoming shareholder vote on a change-of-control transaction, the failure to comply with the disclosure provisions of federal securities laws constitutes irreparable harm. However, Plaintiffs are still required to show irreparable harm under traditional equitable principles. *See Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 64 – 65 (1975); *see also Lone Star Steakhouse*, 148 F.Supp.2d at 1150.

And under ordinary equitable principles, Plaintiffs have not offered any evidence of how *they* will be harmed or how the omitted pieces of information would inform their vote. *Carlson v. Triangle Capital Corp.*, No. 5:18-cv-332-FL, 2018 WL 3546232, at *9 (E.D. N.C. July 23, 2018) (finding plaintiff had failed to establish irreparable harm where there was no evidence that the omitted disclosures would have impacted his vote). They have not even gone so far as to offer any evidence that they have read the proxy statement and that they understand the information at issue in this case. *Id.*; *see also Parshall v. HCSB Financial Corp.*, No. 4:17-cv-01589-RBH, 2017 WL 3130479, at *7 (D. S.C. July 24, 2017) (finding plaintiff failed to establish irreparable harm, in part, because he had not submitted any evidence detailing how the omitted disclosures would

9

inform his vote). Accordingly, the court finds that Plaintiffs have not made a sufficient showing of irreparable harm such that injunctive relief is necessary.

**IV.     Conclusion**

For the reasons above, Plaintiffs have failed to show that they are likely to succeed on the merits and that they will be irreparably injured absent injunctive relief. Accordingly, Plaintiffs' motion for a preliminary injunction (Filing No. 5) is **DENIED**.

**SO ORDERED** this 22nd day of August 2018.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.