UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
EVANSVILLE DIVISION

| | | |
|---|---|---|
| MICHAEL KUEBLER, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | 3:18-cv-00113-RLY-MPB |
| | ) | |
| VECTREN CORPORATION, *et. al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**ENTRY ON MOTION TO DISMISS**

Students throughout the country returned to school this month. Some were excited. Others were disappointed. Many will study math this year. And most who do will bemoan missing points on their test because they did not "show their work" even if their answer was otherwise correct.

This securities case is more or less about that: showing your work. In 2018, Vectren Corporation ("Vectren") and CenterPoint Energy, Inc. ("CenterPoint") entered into a merger agreement, under which Vectren shareholders were paid seventy-two dollars per share. As required by federal securities law, Vectren filed a proxy statement with the SEC in connection with the merger. However, according to this purported class action brought by shareholders, Vectren failed to show all of its work related to the merger: the proxy statement omitted the unlevered cash flow that Vectren was forecasted to generate between 2018 and 2028 and the financial projections for each of Vectren's three main business lines. This critical information, the shareholders insist, was

1

necessary for them to sufficiently assess the values of their shares, and without it, the proxy statement is misleading in violation of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78a *et seq.* and the SEC's implementing Rule 14a–9, 17 C.F.R. § 240.14a–9 ("Rule 14a–9").

But the Exchange Act only applies if the omissions are material and actually cause some economic loss. Considering all the other financial information in the proxy statement, the disclosure of unlevered cash flow and the business-line projections would not have made a difference to a reasonable shareholder. And even if it would have, the shareholders have not sufficiently alleged that the omissions actually caused the harm for which they seek damages. Consequently, the shareholders' claims must be dismissed.

**I.     Legal Standard**

The dismissal rules for failure to state a claim are well-known. Rule 12(b)(6) authorizes a court to dismiss a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12. To survive a Rule (12)(b)(6) motion, a plaintiff must allege "'enough facts to state a claim to relief that is plausible on its face.'" *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 342 (7th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Alarm Detection Systems, Inc. v. Village of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019). The case moves forward if the complaint plausibly suggests the plaintiff is entitled to relief; if not, dismissal is appropriate. *Id.*

There are additional rules for pleadings in securities actions. The Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 78u–4(b), imposes heightened pleading requirements on securities plaintiffs. *Trahan v. Interactive Intelligence Group, Inc.*, 308 F.Supp.3d 977, 986 (S.D. Ind. 2018) (citing *Beck v. Dobrowski*, 559 F.3d 680, 681 – 82 (7th Cir. 2009)). Specifically, plaintiffs alleging a proxy statement is misleading due to an omission must identify each statement alleged to have been misleading, the reason why each statement is misleading, and all of the relevant facts that support that conclusion. § 78u–4(b)(1); *Trahan*, 308 F.Supp.3d at 968. They must also allege that the omission caused some type of economic loss. § 78u–4(b)(4); *Grace v. Rosenstock*, 228 F.3d 40, 46 – 47 (2d Cir. 2000) (noting loss causation must be shown in a cause of action under Section 14(a)). Only particularly pled allegations count under the PSLRA; the court does not consider blanket or catch-all assertions. *Campbell v. Transgenomic, Inc.*, 916 F.3d 1121, 1124 (8th Cir. 2019).

Lastly, a few words about *what* the court will consider. Ordinarily, a court only considers the pleading when ruling on a motion to dismiss. *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018) (citation omitted). "Ordinarily" is the key qualifier: a court *can* consider certain outside materials that the are referred to in the complaint and central to plaintiff's claim. *See Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002). Two materials outside the Complaint are worth discussing here: the proxy statement attached by Defendants in their motion to dismiss and the affidavit of the initial findings of Plaintiffs' financial expert included in the Complaint.

3

The court considers the proxy statement; the court does not consider the expert affidavit. Although both are referred to in the Complaint, only the proxy statement is *central* to Plaintiffs' claims. *See Tierney*, 304 F.3d at 738. Much like how a breach of contract suit depends on the contract, Plaintiffs' securities claim depends on a false or misleading proxy—it is an element of the claim. *City of St. Clair Shores General Employees Retirement System v. Inland Western Retail Real Estate Trust, Inc.*, 635 F.Supp.2d 783, 790 (N.D. Ill. 2009) (citing *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 384 – 85 (1970)). Moreover, courts are permitted to consider proxy statements when ruling on a 12(b)(6) motion without converting it to summary judgment because proxy statements are public disclosure documents, required by law to be filed with the SEC. *See Financial Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 286 (5th Cir. 2006) (noting district courts may consider public disclosure documents that have been filed with the SEC in securities actions when deciding a Rule 12 motion). That does not mean the court necessarily accepts everything in the Proxy Statement as true, but it does mean that the court can consider the contents of the Proxy Statement when analyzing the shareholders' claims. *See City of Sterling Heights General Employees' Retirement System v. Hospira, Inc.*, No. 11–C–8332, 2013 WL 566805, at *11 (N.D. Ill. Feb. 13, 2013) (St. Eve, J.) (collecting cases).

On the other hand, the expert affidavit is *not central* to Plaintiffs' claims: it does not form the basis of the claims nor is it relevant to establishing the facts necessary for Plaintiffs to state a claim. *See Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 455 – 57 (7th Cir. 1998) (reversing district court that

4

considered improper documents—those that did not form the basis of a plaintiff's claims—when ruling on a Rule 12(c) motion). The affidavit is merely *evidence*, which makes it irrelevant in determining whether Plaintiffs have stated a claim. *See Financial Acquisition Partners LP*, 440 F.3d at 286 (holding district court in securities action did not abuse its discretion in refusing to consider opinions and conclusions in expert affidavit because opinions cannot substitute for facts under the PSLRA). With those observations, the court now turns to the history of this case.

## II. Background

### A. The Merger

On April 21, 2018, Vectren and CenterPoint entered into a merger agreement. (*See* Filing No. 64, Consolidated Amended Class Action Complaint (the "Complaint") ¶ 2). Vectren is a gas and electric company[1] that provides energy for much of Southern Indiana and part of Ohio. (*Id.* ¶ 13). CenterPoint is a public utility holding company incorporated in Texas. (Filing No. 68-2, Definitive Proxy Statement (the "Proxy Statement") at 1). Under the agreement, Vectren agreed to become a CenterPoint company and agreed to pay its shareholders seventy-two dollars ($72.00) in cash for each share of common stock owned. (Complaint ¶ 2). Vectren publicly announced the merger two days later on April 23, 2018. (Proxy Statement at 28).

---

[1] Technically, Vectren is an energy holding company of its own wholly owned subsidiary: Vectren Utility Holdings, Inc. (*Id.* ¶ 13). That company serves as an intermediate holding company for three public utility companies: Indiana Gas Company, Inc., Southern Indiana Gas and Electric Company, and Vectren Energy Delivery of Ohio, Inc. (*Id.*). However, the court refers to all of these entities as "Vectren" for the purposes of this Entry.

5

As required by federal securities law, Vectren filed the Proxy Statement with the SEC on July 16, 2018. (Complaint ¶ 2). The Proxy Statement is over 170 pages and discusses the background and financial ramifications of the merger. (*See* Proxy Statement at 16 – 41). Most relevant here, the Proxy includes the Board of Director's recommendation and reasons for the merger (*id.* at 28 – 32), the opinion of Vectren's financial advisor—Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BAML") (*id.* at 32 – 39), and a financial chart summarizing certain financial information prepared by Vectren's management. (*Id.* at 40 – 41). The projections include Net Income, Depreciation and Amortization, EBITDA, and Capital Expenditures. (*Id.* at 40).

On August 28, 2018, Vectren held a meeting for the shareholders to vote on the merger. (Complaint ¶ 7). The merger was approved by sixty-one percent (61%) of Vectren's outstanding shares. (*Id.*). The merger closed in the first quarter of 2019. (*See id.*).

    **B.**    **The Litigation**

After announcing the merger, Vectren filed a preliminary proxy statement on June 18, 2018. (Filing No. 58, Order Denying Preliminary Injunction at 2). Several shareholders sued—six to be precise. (*Id.* at 2 n. 1). The shareholders alleged, albeit in different ways, the preliminary proxy statement was misleading because it omitted key pieces of information. (*Id.* at 2). Another plaintiff joined the fray after Vectren filed its definitive proxy (this is the one the court refers to as the "Proxy Statement") with the SEC on July 16, 2018. (*Id.*). Two of the shareholders moved for a preliminary injunction to enjoin the shareholder vote. (*Id.*).

On August 10, 2018, the court consolidated the seven lawsuits and appointed Michael Kuebler, James Danigelis, and Michael Nisenshal as lead plaintiffs. (*See* Filing No. 52, Entry on Motions to Consolidate). The court then held a hearing on August 15, 2018 on the shareholders' motion for a preliminary injunction. The court ultimately denied their request for an injunction a week later. (*See* Order Denying Preliminary Injunction); *see also Kuebler et al. v. Vectren et al.*, No. 3:18-cv-00113-RLY-MPB, 2018 WL 4003626, at *4 (S.D. Ind. Aug. 22, 2018).

The shareholders then filed the Amended Consolidated Class Action Complaint on October 29, 2018. (Filing No. 64). The Complaint alleges that the Proxy Statement omitted two material pieces of information: the unlevered cash flow Vectren was forecasted to generate between 2018 and 2027 ("Cash Flow Projections") and the financial projections for each of Vectren's three main business lines—gas, electric, and non-regulated—on an individual basis ("Business Segment Projections"). (Complaint ¶ 5). These omissions, according to shareholders, render the Proxy misleading in violation of Section 14(a) and 20(a) of the Exchange Act and SEC's Rule 14a–9. Defendants—Vectren and its directors—now move to dismiss the Complaint for failure to state a claim. (Filing No. 67).

### III. Discussion

Section 14(a) of the Exchange Act forbids soliciting proxies in violation of the rules and regulations issued by the SEC. 15 U.S.C. § 78n(a)(1); *see Trahan*, 308 F.Supp.3d at 986; *see also Lone Star Steakhouse & Saloon, Inc.*, 148 F.Supp.2d 1141, 1150 – 51 (D. Kan. 2001). Rule 14a–9 prohibits soliciting a proxy statement that omits

7

material facts or information. *See* 17 C.F.R. § 240.14a–9; *Trahan*, 308 F.Supp.3d at 986. To withstand a motion to dismiss under these provisions, shareholders must allege (1) the proxy statement contains a material misstatement or omission, and (2) that material misstatement or omission caused them injury. *Trahan*, 308 F.Supp.3d at 986 (citing *Goldfinger v. Journal Communications Inc.*, No. 15–C–12, 2015 WL 2189752, at *2 (E.D. Wis. May 8, 2015)).

A little more about these two requirements. Omitted facts are considered material "if there is a substantial likelihood that a reasonable shareholder would consider [them] important in deciding how to vote." *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *In re Walgreen Co. Stockholder Litigation*, 832 F.3d 718, 723 – 24 (7th Cir. 2016). It is not enough that the omissions *might have* or *could have* influenced a shareholder's decision. *In re Walgreen Co.*, 832 F.3d at 724; *see also Beck*, 559 F.3d at 684 – 85. There must be "a showing of a substantial likelihood that, under all the circumstances, the omitted fact *would have* assumed actual significance in the deliberations of the reasonable shareholder." *TSC Industries*, 426 U.S. at 449 (emphasis added); *In re Walgreen Co.*, 832 F.3d at 724. The materiality inquiry is objective, and the court considers the omissions from the perspective of a reasonable investor. *See Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 318 (4th Cir. 2019) (citing *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 135 S.Ct. 1318, 1327 (2015)).

In addition to materiality, shareholders must allege that their damages were caused by the misstatements or omissions in the proxy statement. 15 U.S.C. § 78u–4(b)(4) ("In

8

any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages."); *see Beck*, 559 F.3d at 684 – 85; *Grace*, 228 F.3d at 46 – 47. In the securities context, the causal element has two components: transaction causation and loss causation. *Grace*, 228 F.3d at 46 – 47. Only loss causation is at issue here. To withstand dismissal on loss causation, the shareholders must allege that the subject of the omissions was the cause of the actual loss suffered. *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173 (2d. Cir. 2005); *see also Lormand v. US Unwired, Inc.*, 565 F.3d 228, 255 – 58 (5th Cir. 2009).

Defendants argue dismissal is appropriate for two reasons: the shareholders failed to allege any material omission from the Proxy Statement, and even if the Proxy Statement omitted material information, the shareholders have failed to allege any economic loss caused by the omissions. The court will take up each argument.[2]

---

[2] Defendants also argue the PSLRA's safe harbor provision applies because the alleged omissions constitute forward-looking statements and are accompanied by cautionary language. *See Trahan*, 308 F.Supp.3d at 994 – 95 (applying safe harbor provision to management forecasts). The PSLRA's safe harbor provision exempts defendants from liability for "forward-looking" statements if (1) the statement is identified as such and surrounded by meaningful cautionary language, or (2) the statement is immaterial, or (3) the plaintiff fails to prove the statement was made with actual knowledge that is was false or misleading. *See* 15 U.S.C. § 78u–5(c); *see also In re Vivendi, S.A. Securities Litigation*, 838 F.3d 223, 245 (2d Cir. 2016) (citations omitted).

It is not clear the safe harbor provision applies to claims brought under Section 14(a). *See Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, 594 F.3d 783, 796 – 97 (11th Cir. 2010) (applying safe harbor provision to claims brought under sections 10(b) and 10b–5 but not to claims brought under section 14(a)); *OFI Asset Management v. Cooper Tire & Rubber*, 834 F.3d 481, 490 (3d Cir. 2016) ("[T]he PSLRA provides a so-called "safe harbor" that immunizes certain "forward-looking" statements from *§ 10(b) liability*.") (emphasis added). Moreover, "[t]o avoid the safe harbor, plaintiffs must plead facts demonstrating that the statement was made with

9

### A. Materiality

The shareholders allege the Proxy Statement was materially misleading because it omitted the Cash Flow Projections and Business Segment Projections. Cash flow, according to the shareholders, is the single most important financial metric when valuing a company for sale because it is objective and not subject to manipulation. (Complaint ¶¶ 65 – 70). They also allege cash flow is a more accurate indicator than net income and EBITDA.[3] (*Id.*). The shareholders allege the Business Segment Projections are material because those are what BAML used to value the company when performing its Discounted Cash Flow ("DCF") analysis. (*Id.* ¶¶ 71 – 72). BAML used the DCF analysis to give its opinion on the value of the Vectren's shares and the overall fairness of the merger. (Proxy Statement at 32 – 39). Because of these two omissions, the shareholders could not adequately assess the intrinsic value of the shares and the DCF analysis performed by BAML was materially misleading. (Complaint ¶¶ 61, 73).

---

actual knowledge of its falsity." *Southland Securities Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 371 (5th Cir. 2004) (citations omitted). However, Plaintiffs do not have to prove a culpable state of mind for a Section 14(a) claim. *See Beck*, 559 F.3d at 682 ("There is no required state of mind for a violation of section 14(a) . . ."); *see also In re Exxon Mobil Corp. Securities Litigation*, 500 F.3d 189, 196 (3d Cir. 2007) ("Violations of § 14(a) . . . may be committed without scienter; in other words, no culpable intent is required.") (citations omitted); *but see Dekalb County Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 408 n. 90 (2d Cir. 2016) (noting circuit split). And the Eighth Circuit—in one of the most recent appellate decisions to consider a claim under Section 14(a)—did not even discuss the safe harbor despite the central claims in that case involving omitted and misleading business projections in a proxy statement— much like the claims here. *See Campbell*, 916 F.3d at 1124. Because other grounds for dismissal are dispositive, the court leaves this issue for another day.

[3] Earnings before interest, taxes, depreciation, and amortization.

These omissions, however, must be considered with what *was* disclosed. *See e.g. New England Anti-Vivisection Soc., Inc. v. U.S. Surgical Corp., Inc.*, 889 F.2d 1198, 1203 (1st Cir. 1989) (misleading statements must be read in the context of the whole document); *Atkins v. Tony Lama Co., Inc.*, 624 F.Supp. 250, 258 (S.D. Ind. 1985) (omissions must be considered in the context of the entire proxy statement) The Proxy Statement details the background of the merger, identifying the different companies and their proposals to acquire Vectren. (Proxy Statement at 16 – 28). It contains the Board of Directors' reasons for approving the merger. (*Id.* 28 – 32). This included financial considerations such as Vectren's recent stock prices and the recommendation of BAML. (*Id.*). The Proxy Statement then summarizes BAML's opinion evaluating the merger. (*Id.* at 32 – 40). This summary contains the information BAML considered, the financial analyses BAML performed, and the ranges BAML calculated with respect to the implied per share equity value for 2018 and 2019. (*Id.*). Following BAML's financial summary, the Proxy Statement discloses certain forward-looking financial projections used to measure Vectren's financial performance:

|  | Year Ended December 31, | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
|  | 2018 | 2019 | 2020 | 2021 | 2022 | 2023 | 2024 | 2025 | 2026 | 2027 |
|  | (in thousands) | | | | | | | | | |
| Net Income | $ 236,739 | $ 257,429 | $ 280,241 | $ 309,123 | $ 346,054 | $ 392,277 | $ 424,703 | $ 484,833 | $ 527,872 | $ 566,943 |
| Depreciation and Amortization | $ 292,331 | $ 319,246 | $ 342,599 | $ 355,175 | $ 369,897 | $ 388,639 | $ 424,882 | $ 481,707 | $ 497,267 | $ 513,607 |
| EBITDA | $ 685,484 | $ 753,257 | $ 816,175 | $ 877,453 | $ 957,702 | $1,056,590 | $1,152,665 | $1,293,246 | $1,361,978 | $1,429,050 |
| Capital Expenditures, excluding AFUDC equity | $(631,551) | $(622,532) | $(599,633) | $(778,389) | $(959,427) | $ (856,742) | $ (637,391) | $ (606,594) | $ (620,404) | $ (594,048) |

(*Id.* at 40 – 41). However, the projections come with tailored warnings:

> These projections are included in this proxy statement because we provided such projections to our financial advisor and to CenterPoint Energy in connection with the merger agreement discussions. The following forward-

11

> looking financial information was not prepared with a view toward public disclosure or with a view toward complying with the guidelines established by the American Institute of Certified Public Accountants with respect to forward-looking financial information, but, in the view of the management of the Company, was prepared on a reasonable basis, reflected the best then-currently available estimates and judgments at the time of its preparation, and presented at the time of its preparation, to the best of management's knowledge and belief, the expected course of action and the expected future financial performance of the Company. *However, this information is not fact and should not be relied upon as being necessarily indicative of future results, and readers of this proxy statement are cautioned not to place undue reliance on the forward-looking financial information.*

(*Id.* at 40) (emphasis added). The Proxy Statement goes on to state that neither an independent auditor nor an independent accountant examined any of the future projections. (*Id.*).

In light of the information actually disclosed along with the accompanying warnings, the omission of the Cash Flow Projections and Business Segment Projections did not render the Proxy Statement materially false or misleading. At most, the omissions *might* have made a difference to a reasonable shareholder, but that is not enough. *In re Walgreen Co.*, 832 F.3d at 724; *see also Beck*, 559 F.3d at 685. There must have been a *substantial likelihood* that the omitted information *would have* actual significance in the deliberations. *See TSC Industries*, 426 U.S. at 449; *In re Walgreen Co.*, 832 F.3d at 724. Given the summary of the merger, the board's reasoning, BAML's financial summary, and the financial projections—which all relate to the performance of the company—the Proxy Statement provided the shareholders with enough information to decide how to vote. The omitted projections are just more information, but that does not make them material. *Beck*, 559 F.3d at 685. Further, the omitted projections are just

12

that: *projections*. They are not statements of fact, and the disclosed projections came with specific warnings that they should not be relied on as being indicative of future results. Those warnings render the omitted projections immaterial. *See Paradise Wire*, 918 F.3d at 321 – 24 (holding omitted "negative" financial information did not render disclosed financial information materially misleading because the proxy statement came with clear warnings concerning the omissions).

The shareholders protest that the Cash Flow Projections and Business Segment Projections are *different* though. They argue that those projections are of such an important character that BAML's DCF Analysis and the disclosed projections are rendered misleading without them. *See United States v. Smith*, 155 F.3d 1051, 1064 n. 20 (9th Cir. 1998) (noting investors are concerned, perhaps above all else, with the future cash flows of the companies in which they invest); *Azar v. Blount Int'l Inc.*, No. 3:16–cv–483–SI, 2017 WL 1055966, at *6 (D. Or. Mar. 20, 2017) (collecting cases discussing importance of projections, including cash flow).

But the shareholders real quibble is with BAML's analysis—not the omission of the projections. The shareholders believe that BAML used high discount rates when conducting its DCF analysis, and so the only way to assess the fairness of BAML's opinion, they say, is the disclosure of the key inputs: the Cash Flow Projections and Business Segment Projections. (*See* Complaint ¶ 73 – 83). However, the law does require disclosure of every financial input used by a financial advisor so that the shareholders can replicate the advisor's analysis. *Bushansky v. Remy International, Inc.*, 262 F.Supp.3d 742, 749 – 50 (S.D. Ind. 2017) (citing *In re Trulia, Inc. Stockholder Litig.*,

13

129 A.3d 884, 900 – 901 (Del. Ch. 2016)) (noting shareholders are only entitled to receive in the proxy statement a fair summary of the substantive work performed by the financial advisor); *see also Skeen v. Jo-Ann Stores, Inc.*, 750 A.2d 1170, 1174 (Del. 2000) (rejecting claim that shareholders should be given all financial data necessary to make an independent determination of value). All that is required is a fair summary. The court agrees with the long list of others that have found additional inputs—including cash flow and business segment projections—are immaterial when a proxy statement contains other valuation projections and a summary of the financial advisor's analysis. *See e.g. Bushansky*, 262 F.Supp.3d at 750 (disclosure of figures underlying cash flow calculations immaterial); *Carlson v. Triangle Capital Corp.*, No. 5:18-CV-332-FL, 2018 WL 3546232, at *4 – 6 (E.D. N.C. July 23, 2018) (same); *In re national Research Corporation Shareholder Litigation*, No. 4:17-cv-441, 2018 WL 4915836, at *4 (D. Neb. Oct. 9, 2018) (same); *Louisiana Mun. Police Employees Retirement System v. Cooper Industries PLC*, No. 12-CV-1750, 2012 WL 4958561, at *8 (N.D. Ohio Oct. 16, 2012) (same); *see also Vardakas v. American DG Energy Inc.*, No. 17-cv-10247-LTS, 2018 WL 1141360, at *4 – 5 (D. Mass. Mar. 2, 2018) (disclosure of inputs underlying fairness analyses immaterial).

The shareholders also say that materiality is a question of fact for a jury, citing a recent Eighth Circuit decision. *See Campbell v. Transgenomic, Inc.*, 916 F.3d 1121 (8th Cir. 2019). This argument fares a little better. In *Campbell*, the Eighth Circuit reversed a district court that found shareholders had failed to state a claim under Section 14(a) based on omissions from a proxy statement and held that the question of materiality was for a

14

jury. *Id.* at 1128. However, *Campbell* is distinguishable. There, the proxy statement omitted *net income*, which the Eighth Circuit had previously emphasized as one of the most valuable figures in determining the fairness of an acquisition. *Campbell*, 916 F.3d at 1125 (citing *Mississippi River Corp. v. FTC*, 454 F.2d 1083, 1086 (8th Cir. 1972)). The shareholders here have not pointed this court toward any Seventh Circuit precedent saying the same about cash flow or business segment projections when other financial indicators are disclosed. Moreover, the shareholders in *Campbell* alleged the omitted net income projections were significantly lower than the other projections that were disclosed. *Id.* at 1125. Here, the shareholders do not contend the disclosed projections significantly undervalued the company or the omitted projections were significantly lower. Second, and perhaps more important, the proxy statement in *Campbell* actually mislabeled certain projections: it listed projections for the post-merger company but labeled the projections as being connected to the pre-merger company. *Id.* at 1126 – 27. This, the Eighth Circuit said, could have caused shareholders to believe the company was significantly more valuable than what it actually was. *Id.* There is no such allegation here. Accepting the shareholders' well-pleaded allegations[4] as true, their Complaint falls short of stating a plausible claim that the Cash Flow Projections and Business Segment Projections are material.

---

[4] To be sure, the Complaint repeatedly alleges that the omissions from the Proxy Statement render it misleading. But that is a legal conclusion which the court does not have to accept as true. *Alarm Detection Systems*, 930 F.3d at 821.

### B. Loss Causation

Even if the Proxy Statement omitted material information, the shareholders must still allege some sort of economic loss caused by the omissions. *Lentell*, 396 F.3d at 172 – 73; *Trahan*, 308 F.Supp.3d at 999 – 1000. The shareholders allege the sales process was flawed, the analysis performed by BAML was skewed, and the Proxy Statement was misleading because the intrinsic value of their shares was actually higher than the value disclosed in the Proxy Statement. (Filing No. 75, Plaintiffs' Response at 30; *see also* Complaint ¶¶ 26 – 41, 60, 61). Had the Proxy Statement disclosed the Cash Flow Projections and Business Segment Projections, the shareholders assert they would have been able to calculate the value of their shares and determine their actual value. (*See id.*).

The problem for the Shareholders is that their claim of economic loss is too speculative. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 – 48 (2005) (holding plaintiff cannot satisfy economic loss requirement by simply alleging the price of a security on the date of purchase was inflated because of a misrepresentation); *see also Trahan*, 308 F.Supp.3d at 999 – 1000.

*Trahan*—a recent case in this district—is on point. There, Genesys acquired Interactive Intelligence Group, Inc. in a cash-out merger where shareholders were paid $60.50 per share. *Id.* at 984. Interactive filed a proxy statement that included much of the same information at issue here: the board's recommendation to approve the merger, management forecasts for the next three years, and an opinion of a financial advisor approving of the transaction. *Id.* 984 – 86. Shareholders sued arguing that the proxy statement was misleading for omitting material information in the proxy statement.

16

Judge Barker found—and this court thinks rightfully so—that the complaint (among other deficiencies) failed to adequately plead loss causation because the allegations were too speculative:

> Trahan [lead shareholder] speculates that, absent the misleadingly pessimistic Proxy Statement, the shareholders would not have approved the Merger in hope that Interactive would prove more valuable as a going concern than the Merger consideration implied. But approval of the Merger can only have proximately caused economic loss if the shareholders' hope would have been *realized*, and Trahan has not plausibly alleged that it would have been. Absent an allegation of a definite, immediately available, superior alternative to the Merger consideration (a higher competing offer, for example), Trahan's allegation depends on the marketplace eventually valuing Interactive at higher than $60.50 per share at some indeterminate future date when Trahan still held his shares and was willing to sell them. "Given the tangle of factors affecting price," and given that, "[o]ther things being equal, the longer the time . . . the more likely that [factors other than an actionable misrepresentation] caused the loss," . . . Trahan has alleged no more than a speculative possibility that he was economically injured by any misrepresentation in connection with the Merger. And that is not enough.

*Id.* at 999 – 1000 (quoting *Dura Pharmaceuticals*, 544 U.S. at 343).

The same can be said here. That there *might* have been a better future prospect at some point in time had the shareholders held on to their shares is too speculative to state a claim—at least without more factual content to support that inference. *See Beck*, 559 F.3d at 684 – 85 (holding shareholders failed to state a claim where the complaint alleged the shareholders would have rejected a merger and continued to reap the economic benefits of their shares had it not been for a misleading proxy); *Lentell*, 396 F.3d at 175 (citation omitted) (noting loss causation cannot be pled by simply alleging a disparity between the price paid and the actual investment quality); *Trahan*, 308 F.Supp.3d at 999 – 1000 (finding shareholders claim of loss too speculative) ; *cf. Azar*, 2017 WL 1055966,

at *11 (finding shareholder had adequately pled loss causation where there were allegations that merger consideration was inadequate *and* allegations that the company withheld more accurate projections, the company had grown the year prior, management had expected performance to improve, and management affirmed the company had hit their year-end targets). The only allegation that comes close is one that alleges an investment web site projected Vectren's earnings growth to be in the teens in the upcoming years. (Complaint ¶ 61). But that alone is not enough—especially when there are no allegations that Vectren turned down a better offer. *See Beck*, 559 F.3d at 684.[5]

There is another problem here: the link between the economic harm and the omissions is too attenuated. *Tricontinental Industries, Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 843 (7th Cir. 2007) (noting there must be a causal connection between the material misrepresentation and loss, not simply that the misrepresentation "touches upon" a later economic loss); *see also In re Vivendi*, 838 F.3d at 261 (noting loss causation requires demonstrating that the *subject* of the fraudulent omission was the cause of the actual loss suffered). The shareholders have not alleged that the disclosed projections undervalued the company or that the omitted projections conflicted with the disclosed projections. Instead, they allege BAML used an inappropriately high discount rate in its DCF analysis and the omitted projections would have allowed them to challenge the veracity of BAML's analysis. (Complaint ¶¶ 58 – 61). That is the problem

---

[5] True, the Shareholders point out that certain bidders submitted *initial* offers worth more than merger consideration. (Complaint ¶ 28). But one of those bidder's final offer was not superior and the other bidder never submitted a *final* offer. (Proxy Statement at 22, 25).

though: the harm suffered by the shareholders comes not from the omitted projections themselves but from *BAML's use of those projections* in its DCF analysis. This is too attenuated to support a causal link between the omitted projections and purported damages, and so the Complaint fails to adequately allege loss causation. *Goodman Life Income Trust*, 594 F.3d at 796 – 97 (holding shareholders failed to plead loss causation where injuries were not caused by misleading statements in proxy); *McDowell v. Bracken*, 317 F.Supp.3d 1162, 1181 (S.D. Fla. 2018), *appeal docketed*, No. 18-12762 (11th Cir. June 29, 2018) (dismissing complaint where shareholders failed to allege a sufficient link between the proxy statement and alleged damages).[6]

## IV. Conclusion

Proxy statements do not have to disclose everything that might be of interest to shareholders. This rule protects *shareholders*. So long as the proxy statement includes the material information related to the acquisition, no securities laws are violated. Which brings us back to the beginning: Vectren "showed enough work" here because the Proxy Statement disclosed the material information related to the merger, and even if the Proxy Statement omitted material information, those omissions did not cause the shareholders any economic harm.

---

[6] The shareholders also brought a claim under Section 20(a) of the Exchange Act. But a Section 20(a) claim is a derivative claim; since the shareholders have failed to state a claim under Section 14(a), their claim under Section 20(a) must equally fail as well. *Trahan*, 308 F.Supp.3d at 1000.

Defendants' Motion to Dismiss (Filing No. 67) is therefore **GRANTED**. The Shareholders claims are **DISMISSED WITH PREJUDICE**.[7]

**SO ORDERED** this 6th day of September 2019.

_____
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.

---

[7] Ordinarily, the court should give a party at least one opportunity to amend its complaint. *Loja v. Main Street Acquisition Corp.*, 906 F.3d 680, 684 – 85 (7th Cir. 2018). Any amendment here, however, would be futile because Proxy Statement disclosed all the relevant, material information, and so the complaint can be dismissed with prejudice. *Id.*